IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**FILED**
NOV 2 2000
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

RONALD W. BAKER, et al )
)
Plaintiffs, )
)
v. ) CV 00-PT-2515-M
)
CHILDERSBURG BANCORPORATION, )
INC., et al )
)
Defendants. )

**ENTERED**
NOV 3 2000

## MEMORANDUM OPINION

The first matters for this court to consider are the following motions filed by the following defendants: (1) Joint Motion to Dismiss filed by all individual defendants except Byron L. Henry on September 26, 2000; (2) Motion to Dismiss filed by Childersburg BanCorporation on September 27, 2000; (3) Motion to Dismiss filed by First Bank of Childersburg on October 2, 2000.

All these motions assert that the plaintiffs do not have standing to assert their claims in this action.

The initial issue to be considered by the court is whether the plaintiffs have standing to bring this action under their purported federal and/or state law claims.[1] The defendants maintain that they have no such standing. The defendants contend that the plaintiffs cannot maintain this action as individuals because the claims made are of the type which could only be brought by one or both of the corporate defendants, or as a derivative action on behalf of one or both of the

---

[1] The Court will not get hung up over whether the issue is "standing," "ripeness" or failure to state claims.

59

corporate defendants, or as a derivative action on behalf of the Childersburg BanCorporation Liquidating Trust.

The complaint filed by the plaintiffs in this action contains, inter alia, the following pertinent allegations:

### Count One

Count One alleges "Breaches of the Duty of Ordinary Care" only by the directors of defendant Childersburg BanCorporation, Inc. All of the allegations made with reference to Count One relate to alleged mismanagement of Childersburg BanCorporation. The count concludes with a general allegation that, by virtue of the various acts of alleged mismanagement, "The shareholders of BanCorporation have been damaged as a direct and proximate result of the breach of duty of the Defendant Directors."

The Court notes the alleged injury charged is to all shareholders resulting from said mismanagement.

### Count Two

Count Two alleges "Breach of Fiduciary Duty" only by both the directors and officers of Childersburg BanCorporation. Again, the generally alleged breach is premised on various allegations of mismanagement.

Again, Count Two concludes with an allegation that "The shareholders of BanCorporation have been damaged as a direct and proximate result of the flagrant failure of the Defendant Officers and Directors to fulfill their duties."

Again, the alleged injury charged is to all shareholders resulting from mismanagement.

### Count Three

Count Three alleges "Breach of Fiduciary Duty" by Trustees of Childersburg BanCorporation Liquidating Trust (Trust).

Count Three alleges that the Trustees are violating their duties as Trustees by paying attorney fees for representation of the Trustees in various lawsuits against them. Count Three concludes with an allegation that "The Plaintiffs and Class Members have suffered monetary damages."

### Count Four

Count Four effectively makes the same claims as Count Three except that it is claimed as a "conversion" claim rather than as a breach of fiduciary duty claim. Again, it is against the Trustees of the Trust.

### Count Five

Same as Counts Three and Four except stated as a "money had and received" claim.

### Count Six

Same as Counts Three, Four and Five except stated as an "unjust enrichment" claim.

### Count Seven

Count Seven, the final claim, alleges "Violations of the Racketeer Influence and Corrupt Organization Act (RICO)." This claim apparently purports to be against each individual defendant and each corporate entity. The Trust and Trustees seem to be named as defendants under Count Seven in an entirely conclusory manner.

Count Seven generally alleges two or more acts of "financial institution fraud" and "a pattern of racketeering activity involving numerous acts of financial institution fraud." Count

Seven makes additional, more specific allegations of improper bank loans, improper record keeping, preparation of fraudulent loan documents, improper loan documentation, misappropriation of bank resources, insufficient oversight, improper expenditures, improper hiring of defendant Henry, illegal loan transactions, making improper unsecured loans, not recording documents, etc.   Count Seven alleges that "The victims of the scheme of the Defendants are the <u>shareholders</u> of BanCorporation, who have seen <u>their investments</u> destroyed by the acts of the Defendants" (emphasis added). The Liquidating Trust and its Board of Trustees are alleged, in a conclusory fashion, to be the part of an overall scheme.

Count Seven is the only purported federal claim in this action. It provides the only purported basis for initial subject matter jurisdiction of this court.

The claims in Counts One, Two, Three, Four, Five and Six are all state law claims. Counts One and Two make state law claims against only the directors of Childersburg BanCorporation. Counts Three, Four, Five and Six make state law claims against only the Trust. Count Seven purports to make a RICO claim against all defendants. The claims are not brought as derivative claims.

## Discussion

The general argument for standing made by the plaintiffs is the following:[2]

> Alabama law allows for direct actions by stockholders under the circumstances alleged in their complaint. Federal law draws upon state law in determining whether plaintiffs have standing to bring their RICO claim. State law, in general, governs whether a stockholder may bring a non-derivative action as to all state and federal claims.

---

[2] See recorded oral argument of October 31, 2000.

The plaintiffs' first premise, that Alabama law allows for non-derivative actions under the circumstances of this case, is apparently premised entirely on the case of Boykin v. Arthur Andersen & Co., 639 So. 2d 504 (Ala. 1994).

Boykin was brought by two stockholders of Secor Bank. The plaintiffs' claims were not based upon mismanagement of the bank nor fraudulent transactions of the bank involving third parties. The case states that, "The damages claimed are based on the purchase, retention, and/or sale of stock with a fair market value substantially less than that represented by the defendants, and on the diminution of the value of plaintiff's stock." 639 So. 2d at 506 (emphasis added). It is further stated that the plaintiffs alleged that the defendants "deliberately entered into a scheme to defraud the stockholders of the bank by misrepresenting its true financial condition." Id. (emphasis added). The plaintiffs claimed that defendants not only mismanaged the bank but also knowingly refused to disclose material liabilities and knowingly failed to disclose three years of losses. Id. The court styled the issue as being "whether the trial court erred in entering the Rule 12(b)(6) dismissal order on the holding that no remedy exists for individual shareholders' claims of fraud, breach of fiduciary duty, negligence and conspiracy to defraud where an accounting firm of a corporation's officers and directors failed to disclose material liabilities to the stockholders." Id. at 507 (emphasis added). Again, "The plaintiffs' claims allege fraud, intentional misrepresentations and omissions of material facts, suppression, conspiracy to defraud, and breach of fiduciary duty." Id. at 508. It is further stated that the plaintiffs "relied to their detriment on inaccurate financial reports .... " (emphasis added). The court concluded that the claims were not derivative in nature. Id.

The strong dissent of three justices and the cases cited by them suggest that Boykin's

holding should be restricted to its facts and allegations. This court concludes that the allegations in Boykin are clearly distinguishable from those in this action. Here, there are no allegations against the moving defendants of fraud, suppression, misrepresentation, reliance, or knowing conduct of any type. The plaintiffs' claims in Boykin were based on alleged direct injury to them based on alleged misconduct directed at them. That is not the case here.

James v. James, 2000 WL 92256, *2 (Ala. 2000) is not contrary. The plaintiff there brought both an individual claim and a derivative action on behalf of the corporation. Id. at *1. The derivative claims included that the plaintiffs' majority shareholder brother had wasted corporate assets, had paid himself and his family excessive compensation, and had unjustly enriched himself at the expense of the corporation. Id. The court stated, "This Court .... has also held that when a plaintiff's status as a shareholder is essential to his claims for damages, including damages based on claims of suppression and oppression, the claims are derivative claims and must be brought on behalf of the corporation." Id. at #2. The court stated that such a claim could not be parlayed into an individual claim based on unfairness. Id. The only arguable distinction in James related to the distribution of the judgment proceeds, not the nature of the action. Id. at *4-5.

This court's conclusion concerning Boykin is supported by the case of Reynolds v. Pel-Pak, Inc., 658 So. 2d 475 (Ct. of Civ. App. Ala 1994).[3] Reynolds similarly distinguishes Boykin and other Alabama cases on the basis that there were no specific representations to the putative plaintiff and that the claims derived from the corporation. Id. at 477.

---

[3]This court notes that during the time the Reynolds litigation was pending, Birmingham Sales petitioned in bankruptcy and bankruptcy trustees were appointed.

6

Citibank, N. A. v. Data Lease Financial Corporation, 828 F.2d 686 (11th Cir. 1987) has a general discussion relating to actions by shareholders. The court stated: "It is an established rule that whenever a plaintiff sues in a stockholder capacity for corporate mismanagement, he must bring the suit derivatively in the name of the corporation." Id. at 692. The court gives the following reasons for the rule: (1) "[E]ach shareholder suffers relatively in proportion to the number of shares he owns and each will be whole if the corporation obtains compensation or restitution from the wrongdoers;" (2) "[I]f each shareholder could sue individually for his losses, the wrongdoer would be subject to 'as many suits .... as there were stockholders in the corporation;'" and (3) "[R]equiring derivative enforcement of claims belonging to a corporation prevents individual shareholders from incurring a benefit at the expense of other similarly situated stockholders."[4] Id. at 693. Citibank grew out of a Florida situation. The court cites cases involving Texas and, perhaps North Dakota law. The law in this area is somewhat universal. There is no apparent difference in Alabama law.

In a case where the facts were more akin to those in this case than those of Boykin, the Supreme Court of Alabama held that the minority stockholder could not personally recover corporate assets allegedly wasted by majority stockholder(s) and manager. In Galbreath v. Scott, 433 So. 2d 454, 457 (Ala. 1983), the court reversed a verdict and judgment in favor of the minority stockholder suing as an individual. The reversal came even though the corporation was a closely held corporation. Id. The Alabama Supreme Court stated: "The verdict in favor of

---

[4] This court realizes that this action purports to be a class action on behalf of similarly situated stockholders. This court is not aware of any cases which excuse class actions from general rule. There could be no certification. There could be opt outs, etc. Standing is determined at the time the action is filed.

7

Scott cannot, however, be allowed to stand. The waste of corporate assets by majority stockholders is primarily an injury to the corporation itself .... If the corporation refused to assert its cause of action, an action may be maintained by the stockholders on behalf of the corporation." Id. Galbreath is not overruled or otherwise cited in Boykin. See also, Crocker v. F.D.I.C., 826 F.2d 347 (5th Cir. 1987) and Atkins v. Hibernia Corp., 182 F.3d 320 (5th Cir. 1999).

This court having concluded that Boykin does not provide a basis for a non-derivative action under the allegations in the complaint in this action, the remaining initial issues are: (1) Does federal law allow for the bringing of the RICO claim as a non-derivative action; and (2) Does the fact that the stock of First Bank of Childersburg which was owned by Childersburg BanCorporation has been sold and that the Trust has been established to liquidate and distribute the remaining assets of Childersburg BanCorporation create a different situation under the controlling law applicable to corporate derivative actions in general?

This court will first look at the law generally applicable to RICO actions. In Bivens Gardens Office Building, Inc. v. Barnett Banks of Florida, Inc., 140 F.3d 898 (11th Cir. 1998), the court cited Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992). "In Holmes, some broker-dealers were the targets of an unlawful stock manipulation scheme designed to render them insolvent and unable to pay their customers' claims. The court concluded that the plaintiffs, customers of these broker-dealers, lacked RICO standing because their injury was purely contingent on the harm suffered by the broker-dealers.'" Id. at 906. The Eleventh Circuit extrapolated from Holmes and its earlier holding in Pelletier v. Zweifel, 921 F.2d 1465 (11th Cir. 1991) and stated: "Applications of [the Holmes and Pelletier] principle means that losses suffered by a company's stockholders as a result of racketeering activity

8

11/02/00  THU 17:12  [TX/RX NO 6464]  ☒009
11/02/00  THU 16:21  [TX/RX NO 5645]  ☒009

against the company do not give them standing under RICO. RICO standing will not arise solely because one is a shareholder or limited partner in a company that was the target of the alleged RICO violation. See e.g. Warren v. Alexander Grant & Company, 828 F.2d 1528, 1530 (11th Cir. 1987)." Id. The court went on to assert that shareholders can bring derivative RICO actions on behalf of corporations. Id. at 906-907. The discussion in Bivens Gardens is consistent with the holdings and discussion in Sears v. Likens, 912 F.2d 889 (7th Cir. 1990) and Adams-Lundy v. Association of Professional Flight Attendants, 844 F.2d 245 (5th Cir. 1988).

This court notes that even if it would be futile to make a demand on the corporate officers or directors to bring an action, the action must apparently still be brought on behalf of the corporation. Here, there is no allegation of demand, futility, or derivation. See American Life Ins. Co. v. Powell, 262 Ala. 560 (1955) and Kinsaul v. Florala Telephone Co., 285 Ala. 16 (1969). The plaintiffs have cited cases which purport to hold that derivative vel non issues are to be decided based on state law in RICO actions. The court need not decide this because even if Alabama law applies, the RICO action would, pursuant to the holdings of Alabama cases and the discussion of Boykin above, still have to be brought as a derivative action.

The court further concludes that the conclusory allegations relating to the Trust do not assert a RICO claim against the Trust. The claims against the Trust clearly do not form part of any alleged pattern of criminal type activity charged in Count Seven. This court does not reach the issue of whether Count Seven states an adequate claim against any defendant. It appears that some victims are named as defendants. Compare Laro v. Chase Manhattan Bank, 866 Fed. Supp. 132 (S.D. N.Y. 1994). The court does conclude that if there is no RICO claim, it would not

accept jurisdiction on any other basis, supplemental or otherwise. There is no claim of diversity jurisdiction.

This court further concludes that it is not necessary for the court to decide whether a derivative action, if brought, would have to be brought on behalf of First Bank of Childersburg, Childersburg BanCorporation, Inc. or the Trust. The action is deficient because it has not been brought as a derivative action on behalf of any entity. The court further concludes that the existence of the liquidating trust does not make a difference. The Trust is collecting the assets of the corporation. If the claims against the defendants belong to First Bank of Childersburg, Childersburg BanCorporation and the Trust may also have a claim against someone for reserving those claims. Any such claim would also be a claim of Childersburg BanCorporation or the Trust. As to the Trust situation, compare James and Reynolds, supra. Also see Stevens v. Lowder, 643 F.2d 1078 (Fifth Cir. Unit B 1981) (tantamount to an Eleventh Circuit case). In Stevens the individual stockholders could not maintain an action is their own names even though the bank corporation was insolvent and in the process (as is the case here) of winding up the affairs of the bank. This court notes that, although Stevens predates Boykin by some thirteen years, it recognized the Boykin distinction, not applicable here. The court also notes, for whatever it is worth, that Rule 23.1 of the Alabama Rules of Civil Procedures applies to both corporations and unincorporated associations.

The said motions to dismiss will be granted. The issues are not issues of "technicalities." They are issues determined by controlling authority. It would serve no good purpose for anyone to obtain an invalid judgment as was done in Scott.

This the 2nd day of November, 2000.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE